UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| CALIFORNIA HOSPITAL ASSOCIATION,<br><br>    Plaintiff,<br><br>vs.<br><br>DAVID MAXWELL-JOLLY, Director of the State Department of Health Care Services, State of California,<br><br>    Defendant. | Case No. CV 09-8642 CAS (MANx)<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |

## I.  INTRODUCTION & BACKGROUND

On November 24, 2009, plaintiff California Hospital Association ("CHA") filed the instant action against defendant David Maxwell-Jolly, Director of the California Department of Health Care Services (the "Director"). The California Department of Health Care Services (the "Department") is a California agency charged with the administration of California's Medicaid program, Medi-Cal. Plaintiff is a trade association representing certain California hospitals that "participate in the Medi-Cal program." Compl. ¶ 54.

On July 28, 2009, California Governor Arnold Schwarzenegger signed into law Assembly Bill X4 5 ("AB 5"), the budget trailer bill for California fiscal year 2009-

2010. AB 5 amends Cal. Welf. & Inst. Code § 14105.191, in part, and effectively "freezes" the Medi-Cal reimbursement rates for certain designated services "rendered during the 2009-2010 rate year and each rate year thereafter" at 2008-2009 levels. Cal. Welf. & Inst. Code § 14105.191(f); Compl. ¶ 39. Among the designated services, are multiple classes of hospital services, including services provided by nursing facilities that are part of hospitals (distinct part/nursing facilities, or "DP/NFs"), and by subacute and pediatric subacute care units that are part of hospitals. Cal. Welf. & Inst. Code § 14105.191(f) (referencing classes of providers identified in subdivision (b)(2)). AB 5 also amends Cal. Welf. & Inst. Code § 14166.245, which governs payments to acute care hospitals not under contract with the Department for inpatient services. AB 5 eliminates, effective July 1, 2009, the exemption for small and rural hospitals from the ten percent reduction on payments for inpatient services, originally enacted by Assembly Bill X3 5 in February 2008 ("2008 AB 5").[1] Id. § 14166.245(g)(1); Compl. ¶ 40.

Plaintiff alleges that these two reimbursement rate provisions in AB 5 violate Title XIX of the Social Security Act, 42 U.S.C. § 1396 et seq. (the "Medicaid Act"), and therefore are invalid under the Supremacy Clause of the United States Constitution. U.S. CONST. art. VI, cl. 2. Specifically, plaintiff alleges that AB 5 is preempted by § 30(A) of the Medicaid Act, 42 U.S.C. § 1396a(a)(30)(A) ("§ 30(A)"), because neither the Director nor the California legislature considered the "quality of care" and "equal access" provisions of § 30(A), or whether reimbursement rates are reasonably related to provider costs, before its implementation. Compl. ¶ 58. Plaintiff further alleges that the Director failed to comply with additional requirements of the Medicaid Act, federal regulations, and the state plan. Specifically, plaintiffs alleges that the two rate provisions of AB 5 were implemented in violation of (1) the public process provisions of

---

[1] Assembly Bill 1183 ("2008 AB 1183"), enacted on September 16, 2008, amended Cal. Welf. & Inst. Code § 14166.245 such that effective November 1, 2008, small and rural hospitals were exempt from the ten percent reduction.

2

42 U.S.C. § 1396a(a)(13)(A) ("§ 13(A)");[2] (2) the public notice provisions of 42 C.F.R. § 447.205; (3) the State Plan requirements. Compl. ¶¶ 59-66. Plaintiffs seek declaratory relief and injunctive relief to restrain the implementation and enforcement of the two rate provisions of AB 5 at issue.

Medicaid is a cooperative federal program: the federal government provides federal funding to the states so that states may provide medical care to their needy citizens. State participation is voluntary; however, once a state chooses to participate by accepting federal funds, it must comply with requirements imposed by the Medicaid Act. Because California has elected to participate in the Medicaid program, it must administer its state Medicaid program, Medi-Cal, in compliance with a State Medicaid Plan ("State Plan") that has been pre-approved by the Secretary of the U.S. Department of Health and Human Services (the "Secretary"), and which complies with federal Medicaid law, including the requirements set forth in 42 U.S.C. § 1396a(a)(1)-(70). In accordance with these requirements, California must provide "methods and procedures" for the payment of care and services that (1) are "consistent with efficiency, economy, and quality of care," and (2) ensure their availability to the Medicaid population to the same "extent as they are available to the general population in the geographic area." 42 U.S.C. § 1396a(a)(30)(A). These requirements are known, respectively, as the "quality of care" and "equal access" provisions of § 30(A) of the Medicaid Act. In Orthopedic Hospital v. Belshe, 103 F.3d 1491, 1496 (9th Cir. 1997), the Ninth Circuit interpreted § 30(A) to require the Director to set reimbursement rates that "bear a reasonable relationship to efficient and economical hospitals' costs of providing quality services, unless the Department shows some justification for rates that substantially deviate from such costs." See also Indep. Living Ctr. of S. Cal. V. Maxwell-Jolly, 572 F.3 644, 651-52 (9th Cir. 2009) ("ILC II") (affirming the standards established in Orthopedic Hospital).

---

[2] In addition to bringing the instant action under the Supremacy Clause, plaintiff alleges that it has standing to enforce § 13(A) through a civil rights action under 42 U.S.C. § 1983. Compl. ¶ 61.

To meet this statutory requirement, the Ninth Circuit held that the Director "must rely on responsible cost studies, its own or others', that provide reliable data as a basis for its rate setting." Orthopedic Hospital, 103 F.3d at 1496. In addition, for certain providers, including hospital service providers, California must establish rates through a public process that includes publication of the proposed rates and their underlying methodologies, such that providers are "given a reasonable opportunity for review and comment." 42 U.S.C. § 1396a(a)(13)(A) ("§ 13(A)"). Further, the state must administer Medi-Cal in accordance with Medicaid regulations; applicable state law, as specified in sections 14000 to 14124 of the Welf. & Inst. Code; and Medi-Cal regulations.

On January 11, 2010, plaintiff filed the instant motion for preliminary injunction. On February 5, 2010, the Director filed an amended opposition.[3] Plaintiff filed its reply on February 10, 2010. A hearing was held on February 22, 2010. After carefully considering the arguments set forth by both parties, the Court finds and concludes as follows.

## II. LEGAL STANDARD

"A preliminary injunction is not a preliminary adjudication on the merits: it is an equitable device for preserving the status quo and preventing the irreparable loss of rights before judgment." Textile Unlimited v. A..BMH & Co., 240 F.3d 781, 786 (9th Cir. 2001). The Ninth Circuit summarized the Supreme Court's recent clarification of the standard for granting preliminary injunctions in Winter v. Natural Res. Def. Council, 129 S. Ct. 365, 374 (2008), as follows: "[a] plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Am. Trucking Ass'n, Inc. v. City of Los Angeles, 559 F.3d 1046, 1052 (9th Cir. 2009).

---

[3] The Director's opposition, filed February 1, 2010, was stricken by the Court because it exceed the page limit of Local Rule 11-6. The Court directed the Director to file an opposition that complies with the Local Rules of Court on or before February 10, 2010.

## III. DISCUSSION

### A. LIKELIHOOD OF SUCCESS ON THE MERITS

As a threshold matter, the Director contends that the instant motion should be denied because plaintiff fails to properly allege standing.[4] Opp'n at 3-4. For the reasons discussed in this Court's February 22, 2010 order denying the Director's motion to dismiss, the Court finds that CHA has properly alleged associational standing to bring the instant action.[5]

Plaintiff seeks an order that preliminarily enjoins the Director from implementing the reimbursement rate provisions of AB 5 codified at Cal. Welf. & Inst. Code § 14105.191(f) and § 14166.245(g)(1), on the basis that plaintiff is likely to succeed on the

---

[4] The Director contends that to the extent CHA's membership consists of publicly-owned providers of Medi-Cal services, CHA lacks representational standing to seek injunctive relief on behalf of such political subdivisions of the State that would not have standing to bring this action on their own behalf. Opp'n at 3-4 (citing Palomar Pomerado Health Sys. v. Belshe, 280 F.3d 1104 (9th Cir. 1999)). The Director requests that the Court deny plaintiff's motion or, in the alternative, stay the motion pending discovery of CHA's membership. Id. At oral argument, plaintiff represented to the Court that at least five of its members qualify as "small and rural hospitals" under the statute, which are not public hospital districts — specifically, Coalinga Regional Medical Center, Barton Memorial Hospital, George L. Mee Memorial Hospital, Marshall Medical Center SNF, and Sutter Amador. See Suppl. Declaration of Patricia Blaisdell In Support of Mot. For Preliminary Injunction, Ex. A; Def.'s Req. For Judicial Not. In Support of Opp'n to Mot. For Preliminary Inunction, Ex. 17.

[5] At oral argument, the Director requested that to the extent this Court awards plaintiff any injunctive relief, the relief be tailored to address only those CHA members that would have standing in their own right to bring suit and to exempt hospitals that are political subdivisions of the State. As the Court noted in its February 22, 2010 order, CHA may assert associational standing to bring the instant action for injunctive relief. Moreover, the holding of Palomar, 180 F.3d at 1108 (holding that a political subdivision of the State lacks standing to bring an action against the State in federal court, at least to the extent that its action challenges the validity of state regulations on constitutional grounds), does not suggest that even though they lack standing, political subdivisions remain subject to state laws that are otherwise declared to be invalid under the Supremacy Clause.

merits of each of its four claims against the Director.

As noted above, plaintiff brings its first claim for relief under the Supremacy Clause based on the allegation that AB 5 is preempted by § 30(A). The Ninth Circuit has held that plaintiff may bring suit under the Supremacy Clause to enjoin implementation of state legislation preempted by the Medicaid Act. See, e.g., Indep. Living Ctr. of S. Cal. v. Shewry, 543 F.3d 1050, 1065-66 (9th Cir. 2008) ("ILC I"). Under general principles of federal conflict preemption, state law is preempted only to the extent that it actually conflicts with state law. Pacific Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n, 461 U.S. 190, 204 (1983). Such a conflict may arise either where "compliance with both federal and state regulations is a physical impossibility, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Id. at 203-04. In so far as the California Legislature and the Department fail to consider the factors required by § 30(A) before setting Medi-Cal reimbursement rates, the Court may find that such state legislation frustrates the purpose underlying § 30(A), and is thus preempted. See ILC II, 572 F.3d at 653. Section 30(A) creates duties on behalf of the Department, i.e., the duty to consider efficiency, economy, and quality of care when establishing reimbursement rates. See Orthopedic Hospital, 103 F.3d at 1496-97. Thus, when the State of California seeks to modify reimbursement rates for health care services provided under the Medi-Cal program, it must consider efficiency, economy, quality of care, and equality of access, as well as the effect of providers' costs on those relevant factors. See ILC II, 572 F.3d at 651-53. As the Ninth Circuit held in Orthopedic Hospital, 103 F.3d at 1496, § 30(A) requires that the Director set reimbursement rates that "bear a reasonable relationship to efficient and economical hospitals' costs of providing quality services, unless the Department shows some justification for rates that substantially deviate from such costs." To meet this statutory requirement, the Director "must rely on responsible cost studies, its own or others', that provide reliable data as a basis for its rate setting." 103 F.3d at 1496.

Plaintiff contends that the California legislature failed to consider the § 30(A) factors before enacting AB 5 as a budget trailer bill. Mot. at 13. According to plaintiff, there is nothing in the legislative history that indicates that the state considered the § 30(A) factors, including hospital costs, prior to enacting AB 5; nor is there evidence that it reviewed or relied on cost studies, and thus considered whether the new payments rates to hospitals, including DP/NF and subacute units, would be reasonably related to hospital costs. Id. at 14-16; Declaration of Jay Raymond. Instead, plaintiff contends that given the haste with which AB 5 was enacted, there was little opportunity for the legislature to consider the § 30(A) factors.[6] Id. at 15-16. Similar to the Medi-Cal reimbursement rates enacted by 2008 AB 5 and AB 1183, which were found likely preempted by § 30(A) in ILC II and Cal. Pharm. Ass'n v. Maxwell-Jolly, 563 F.3d 847 (9th Cir. 2009), plaintiff asserts that the reimbursement rate provisions of AB 5 were enacted for purely budgetary reasons in violation of § 30 (A). Id. at 16.

The Director responds that because the California legislature limited reimbursement to 90 percent of hospitals' allowable audited costs, that it expressly considered non-contract hospital costs in enacting the ten percent rate reduction, codified at § 14166.245(b). Opp'n at 4. Because ninety percent is within the 85 to 95 percent "range of reasonableness" set by the Boren Amendment, previously codified at § 1396a(a)(13(A), the Director argues that the state has satisfied the more flexible requirements of § 30(A). Id. at 5, 7. However, the Ninth Circuit has already rejected this argument in the related matter of ILC II, 572 F.3d at 655 n.11, where it found that the substantive requirements under the Boren Amendment do not apply to the court's interpretation of § 30(A). In addition, the Court notes that the Director has not proffered any evidence that the legislature considered § 30(A) factors and hospital costs when

---

[6] AB 5 was originally introduced on July 2, 2009 without any substantive content. The Senate amended AB 5 on July 23, 2009, to add virtually all of the budget trailer language, included the rate provisions at issue, and the Senate and Assembly passed AB 5 that same day. The Governor signed the bill on July 28, 2009.

7

enacting the freeze on DP/NFs and subacute rates. Accordingly, the Court concludes that there is no evidence that the legislature complied with the procedural requirements under § 30(A) when enacting the challenged rate provisions of AB 5. Rather, it appears that the only reason for imposing the cuts was California's current fiscal emergency.

In the alternative, the Director contends that to the extent that § 30(A) imposes a duty on the State, this duty rests solely with the Department and cannot apply to the conduct of the State legislature. Opp'n at 8. He argues further that under the challenged statutes, the Department retains discretion not to implement the rate freeze and to reinstate the ten percent reduction for small and rural hospitals, if it determines that the enacted rates would not comply with federal Medicaid requirements. Id. at 5-6, 8. In support of this argument, the Director cites to § 14105.191(i).[7] Id. at 6. This code section provides that:

> The department shall promptly seek any necessary federal approvals for the implementation of this section. To the extent that federal financial participation is not available with respect to any payment that is reduced or limited pursuant to this section, the director may elect not to implement that reduction or limitation.

14105.191(i). Finally, the Director contends that the Department made the necessary "bona fide fact-findings" under § 30(A), based on reliable cost studies involving the criteria of efficiency, economy, quality of care, and access to cares, before exercising its discretion to implement the two challenged rate provisions of AB 5. Opp'n at 7. The Director submits declarations of three Department employees and one independent contractor. See Declarations of Sandra Yien; Jalynne Callori; Timothy Matsumoto; and

---

[7] Further, the Director contends that the Department retains broad authority to "limit the rates of payments for health care services." Cal. Welf. & Inst. Code § 14105(a). Plaintiff replies that to the extent that the Director asserts authority to adjust payment rates, pursuant to § 14105(a), that this contention is defeated by the express terms of § 14105.191(a) which provide that "[n]otwithstanding any other provision of law . . the director shall reduce provide payments, as specified in this section." Reply at 12, n. 7.

Susan Flores.

While the Director maintains that the Department has discretion under § 14105.191(i) not to enforce rate provisions enacted by AB 5, the Court notes this section expressly does not apply to payments to hospitals not under contract with the State for inpatient services, and thus would not apply to the challenged provision, enacted at § 14166.245. See Cal. Welf. & Int. Code § 14105.191(c) (providing that payments to non-contract hospitals shall be governed by 14166.245). Further, plaintiff contends that by the plain language of §14105.191, the Director has limited discretion to "react to the non-availability of federal funding," and that nothing in the section suggests that the Director can decline to implement certain payment limitations.[8] Reply at 12. As this Court has previously noted, studies that constitute post-hoc rationalization for a legislative decision that has already been made are insufficient to demonstrate compliance with § 30(A). See Cal. Pharm., No. 09-722, slip. op. at 9-11 (C.D. Cal. Mar. 9, 2009), aff'd by 563 F.3d 847, 850 (9th Cir. 2009). Thus, despite the Director's assertion that AB 5 gives him some discretion to alter the rate cuts based on the Department's own analysis, which it does not appear to do, the Court finds that the declarations submitted by the Director do not demonstrate compliance with § 30(A).[9]

---

[8] Moreover, plaintiff contends that all public notice of the rate limitations issued by the Department indicate that those limits were legislatively mandated, and thus it argues that the Director has never "behaved as if he had any choice but to implement" the rate limitations enacted by AB 5. Reply at 12-13 (citing, e.g., the Department's announcement of the reimbursement limitation in the July 31, 2009 California Regulatory Notice Register).

[9] Specifically, based on the declarations submitted by the Director, it appears the Department has conducted cost-based rate analysis to determine how past rate reductions, namely the ten percent and five percent rate reductions enacted by 2008 AB 5 and AB 1183, affected Medi-Cal reimbursement. See, e.g., Matsumoto Decl. ¶¶ 7-9, Ex. 28. Further, the Department submits a copy of its analysis of how the rate freeze will affect reimbursement of 2009-2010 projected costs. See Yien Decl. ¶¶ 8, 13, Exs. 21, 22. Finally, the Department asked Medi-Cal fiscal intermediary, HP Enterprise Services, which
(continued...)

Because the Court finds that plaintiff has demonstrated a likelihood of success on the merits of its § 30(A) claim, the Court need not address the merits of plaintiff's remaining claims for purposes of the present motion.

**B.     IRREPARABLE HARM**

Plaintiff contends that its members, who participate in the Medi-Cal program, are being irreparably harmed by the reimbursement rate provisions of AB 5 codified at Cal. Welf. & Inst. Code § 14105.191(f) and § 14166.245(g)(1). Mot. at 21. Plaintiff argues that its members will suffer pecuniary harm as a result of the rate provisions, given that they will receive less reimbursement than they would otherwise receive absent the limitations enacted by AB 5. Id. at 21-22. Further, it argues that the Ninth Circuit has held that, notwithstanding the general rule that monetary harm does not constitute irreparable harm, pecuniary harm may constitute irreparable injury if the plaintiff cannot recover damages from the defendant because such retroactive monetary claims would be barred by the Eleventh Amendment. Id. (citing Cal. Pharm., 563 F.3d at 851-52). Given that CHA's member hospitals are barred by the Eleventh Amendment from obtaining retroactive relief in federal court from the AB 5 rate provisions, specifically with respect to services provided for non-contract inpatient services by small and rural hospitals on or

---

[9](...continued)
administers Medi-Cal claims, to evaluate paid claims information for a period when there was a reimbursement rate reduction, July 1, 2008 through February 28, 2009, as compared to a period when no reduction was in effect, July 1, 2007 through February 28, 2008. Yien Decl. ¶ 21. The purpose of this January 2010 study was to determine how past rate reductions impacted beneficiary access. Id.; see Flores Decl. (summarizing results of study); Exs. 14, 15. While the Director contends that these studies indicate that the current rate reductions will not impair beneficiary access and that current reimbursement rates fall within the "range of reasonableness," the Court finds that this evidence does not demonstrate that the specific challenged rate provisions, codified at § 14105.191 and § 14166.245, were enacted and implemented "based on" the Legislature and Department's consideration of responsible cost studies and a finding that AB 5 was consistent with efficiency, economy, quality of care, and access.

after July 1, 2009, and for DP/NFs and subacute services on or after August 1, 2009, plaintiff contends that they will suffer irreparable harm if the requested injunction is not granted.[10]

The Director responds that plaintiff does not meet its burden of showing harm because it does not proffer specific evidence of the alleged pecuniary harm caused by AB 5. Opp'n at 20. Plaintiff replies that no such showing is required because it is self-evident from the terms of the two rate provisions that AB 5 reduces payments to providers. Reply at 20.

First, § 14105.191, as amended by AB 5, effectively "freezes" the Medi-Cal reimbursement rates for certain designated services, including services provided by DP/NFs and subacute care units, "rendered during the 2009-2010 rate year and each rate year thereafter" at 2008-2009 levels. Cal. Welf. & Inst. Code § 14105.191(f). Because the reimbursement methodology for determining DP/NFs and subacute payment rates is based on historical cost data, the Department is required to make annual updates to such payment rates.[11] See State Plan Attachment 4.19-D at 1; Cal. Code Regs. tit. 22, § 51511 (explaining that DP/NFs receive prospectively determined per diem reimbursement rates based on the lesser of an individual facility's projected costs or a prospectively determined median per diem rate); id. §§ 51511.5l; 51511.6 (outlining a similar reimbursement scheme for facilities providing adult and pediatric subacute services).

---

[10] Plaintiff contends that in the Medicaid context, the issue of whether relief is prospective or retrospective depends on the date of service and not the date of payment. Mot. at 23 (citing e.g., ILC II, 572 F.3d at 661, n. 19). The express terms of the amended versions of § 14105.191 and § 14166.245 state that the limit on reimbursement rates became effective for services rendered since August 1, 2009 and July 1, 2009, respectively. Cal. Welf. & Inst. Code § 14105.191(f); § 14166.245(g)(1). Accordingly, plaintiff contends that the Director cannot dispute that the rate limitations of AB 5 are already in effect, even if the Director has not yet implemented them. Mot. at 23.

[11] According to plaintiff, the Department uses cost report data submitted by participating hospitals, from two years prior, when setting rates for the upcoming year. Mot. at 5.

Thus, plaintiff argues that AB 5 indefinitely suspends the annual payment for these services, regardless of how drastically provider costs may increase in subsequent years. Mot. at 11. The Director responds that plaintiff's claim of harm is illusory because while the Department does conduct annual cost studies, there is no Medicaid requirement that California provide annual payment increases.[12] Opp'n at 21. Based on the historical rate data and the Department's own data regarding "unfrozen" DP/NFs and subacute rates for the 2009-2010 year, plaintiff replies that it is clear that DP/NFs and subacute rates would have increased were it not for the challenged rate limitation.[13] Mot. at 22; Reply at 22-23. Further, plaintiff provides, by way of example, that CHA member Community Medical Center is currently being paid for DP/NF services at a "frozen" rate of $343.63, while the Department has calculated an "unfrozen" rate for the facility of

---

[12] In addition, the Director asserts that given that the Department was paying 10 percent and then 5 percent reduced rates during the 2008-2009 year, the unreduced 2008-2009 rates now being paid to DP/NFs and subacute care providers, are actually higher than the rates being paid a year ago. Opp'n at 20-21. However, a comparison to reduced rates, already found likely preempted by federal law, is not the appropriate framework for analyzing harm. See, e.g., ILC I, 543 F.3d at 1065 (finding that "loss of gross income" resulting from the specific Medical rate change is cognizable injury for purposes of standing).

[13] According to plaintiff, the median rate for DP/NF services increased by an average of 14.37 percent each year between 2004 and 2008. Mot. at 22, n.9; Blaisdell Decl. ¶ 5. Further, it argues that the median rate for adult subacute services went up by an average of 8.96 percent, and the median rate for pediatric subacute services increased by an average of 4.85 percent. Id. Further, plaintiff argues that the fact that the rate freeze provision is projected to result in budgetary savings of approximately $75 million demonstrates that hospitals would be paid more for services but for AB 5. Mot. at 17, 22; Raymond Decl. ¶ 9; Ex. B at 153. As for the Department's own data, plaintiff submits spreadsheets prepared by the Department with calculations of the "unfrozen" DP/NFs and subacute rates for the 2009-2010 year. Suppl. Blaisdell Decl. ¶¶ 6-7; Exs. B. When compared with the frozen payment rates, plaintiff asserts that numerous facilities are being paid less in 2009-2010 than they would otherwise have been absent the challenged provision in AB 5. Id.; Ex. C.

$381.37 for 2009-2010.[14] Reply at 23; Supp. Blaisdell Decl. ¶ 7; Ex. C. Finally, the Director responds that certain DP/NFs may incur no real harm from the rate freeze because many DP/NFs receive supplemental reimbursement over and above the usual Medi-Cal rate reimbursement. Opp'n at 21; Declaration of Larry Brown ¶¶ 5-6. Plaintiff responds that the Director overstates the availability of these supplements payments, and asserts that only a small number of facilities impacted by the rate freeze will qualify for such payments. Reply at 22, n.13; Declaration of Henry Zaretsky ¶¶ 18, 22.

As to the second challenged rate provision, § 14166.245, as amended by AB 5, reduces the Medi-Cal reimbursement rate of inpatient services provided by small and rural hospitals, not under contract with the State, by ten percent.[15] Cal. Welf. & Inst. Code § 14166.245(g)(1). In Santa Rosa Memorial Hospital v. Maxwell-Jolly, No. 08-5173 SC, 2009 WL 3925498, at *5 (N.D. Cal. Nov. 18, 2009), the court found that the plaintiff hospitals were harmed by the ten percent rate reduction enacted by 2008 AB 5. Plaintiff contends that AB 5 is effectively the same rate reduction as 2008 AB 5, given that AB 5 "simply resurrects the same rate reduction for small and rural facilities, after [2008] AB 1183 temporarily exempted this category of facilities." Mot. at 21-22. Accordingly, it argues that just as the 2008 AB 5 harmed plaintiff in Santa Rosa, AB 5 is

---

[14] Plaintiff asserts that annualized for the entire year, this differential in the reimbursement rates will result in total annualized losses to the facility of $414,001.66 for 2009-2010. Reply at 23; Suppl. Blaisdell Decl. ¶ 7; Ex. C. Further, plaintiff provides other examples of member hospitals that provide DP/NFs and subacute services, which will be receive less gross income as a result of the payment freeze enacted in § 14105.191(f). Id.

[15] The relevant code section states that "[o]n and after July 1, 2009, small and rural hospitals . . . shall be subject to the reductions set forth in paragraph (1) of subdivision (b) and subparagraph (A) of paragraph (3) of subdivision (c) . . . . ." Cal. Welf. & Inst. Code § 14166.245(g)(1). Subdivision (b)(1) states, in pertinent part, that for non-contract hospitals "amounts paid as interim payments for inpatient hospital services . . .shall be reduced by 10 percent." Id. § 14166.245(b)(1). Subdivision (c)(3)(A) provides that "[w]hen calculating a hospital's cost report settlement for a hospital's fiscal period . . ., the settlement . . . shall be limited to . . . [n]inety percent of the hospital's audited allowable cost per day for those services . . . ." Id. § 14166.245(c)(3)(A).

harming CHA's small and rural hospitals. Id. The Director responds that no real harm may occur as a result of § 14166.245 because several small and rural hospitals are expected to be paid disproportionate share hospital ("DSH") reimbursement for acute care hospital inpatient services rendered during 2009-2010, and thus these DSH payments will push total reimbursement for these hospitals to above 90 percent, and in some instances above 100 percent, of allowable costs. Opp'n at 21; Declaration of Jalynne Callori ¶ 7.

The Court finds that plaintiff has sufficiently demonstrated that there is a likelihood certain CHA member hospitals will suffer monetary losses as a result of the rate freeze and ten percent payment reduction implemented by AB 5. Moreover, the Court concludes that plaintiffs have shown irreparable harm if an injunction is not granted, given that the relevant rate provisions became effective July 1, 2009 and August 1, 2009, and plaintiff's members would be barred by the Eleventh Amendment from obtaining retroactive relief in federal court. See Cal. Pharm., 563 F.3d at 851-52.

### C. BALANCE OF HARDSHIPS & PUBLIC INTEREST

While the Court is mindful of the difficulty facing the State of California in light of its fiscal crisis, the Ninth Circuit has held that "[s]tate budgetary considerations do not . . . in social welfare cases, constitute a critical public interest that would be injured by the grant of preliminary relief. In contrast, there is a robust public interest in safeguarding access to health care for those eligible for Medicaid." ILC II, 572 F.3d at 659. Further, the Ninth Circuit has determined that "it would not be equitable or in the public's interest to allow the state to continue to violate the requirements of federal law." Cal. Pharm., 563 F.3d at 852-53. Given that the State may decide to implement a rate change upon making a properly reasoned and supported analysis, the Court finds that the balance of equities and the public interest weigh in favor of granting the injunction.

### IV. CONCLUSION

In accordance with the foregoing, the Court GRANTS plaintiff's motion for preliminary injunction. The Court hereby orders respondent Director, his agents,

servants, employees, attorneys, successors, and all those working in concert with him to refrain from enforcing Cal. Welf. & Inst. Code § 14105.191(f), including refraining from effectively freezing the Medi-Cal reimbursement rates for services provided by nursing facilities that are part of hospitals, and by subacute and pediatric subacute care units that are part of hospitals, "rendered during the 2009-2010 rate year and each rate year thereafter" at 2008-2009 levels. Further, the Court orders the Director, et al., to refrain from enforcing that portion of Cal. Welf. & Inst. Code 14166.245(g)(1) which reduces by ten percent payments to small and rural hospitals, not under contract with the Department, for inpatient services provided on or after July 1, 2009.

IT IS SO ORDERED

Dated: February 24, 2010

_____
CHRISTINA A. SNYDER
UNITED STATES DISTRICT JUDGE